IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Frederick J. Voss, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Frederick J. Voss, Respondent.

Supreme Court

*No. 2008AP182–D. Decided January 19, 2011.*

2011 WI 2

(Also reported in 795 N.W.2d 415.)

1

¶ 1. PER CURIAM. We review the report and recommendation of the referee, Stanley F. Hack, that Attorney Frederick J. Voss's license to practice law be suspended for at least one year and that he bear the full costs of this proceeding. Because no appeal has been filed, we review the referee's report and recommendation pursuant to SCR 22.17(2).[1] We approve and adopt the referee's findings of fact and conclusions of law. We find, moreover, that the seriousness of Attorney Voss's professional misconduct warrants a suspension of his license for four years, eight months. We also find it appropriate to order that Attorney Voss have no contact with his former client and that the entire file and record in this matter be ordered to remain confidential and sealed. Finally, we agree that Attorney Voss should pay

---

[1] SCR 22.17(2) states:

If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

the full costs of this disciplinary proceeding, which totaled $145,216.81 as of April 19, 2010.[2]

¶ 2. Attorney Voss was admitted to practice law in Wisconsin in 1983 and practices in Rhinelander. In 2006 he was publicly reprimanded for misconduct consisting of arranging for a client to meet with persons in violation of a no-contact order issued by the Marathon County circuit court and failing to disclose to jail personnel the material fact of the existence of the no-contact order, when disclosure was necessary to avoid assisting the client in a criminal act.

¶ 3. The misconduct at issue in this case involves Attorney Voss's long-time representation of a female client with a very extensive history of and treatment for various psychiatric disorders and alcohol dependency. The client's diagnoses include bipolar I disorder, post-traumatic stress disorder, eating disorders, and severe personality disorder with histrionic, borderline, anti-social, and passive-aggressive features.

¶ 4. The client has been hospitalized and placed at various inpatient mental health and substance abuse facilities on numerous occasions since 1999. She had sexual relations with a man who worked at one of her treatment centers. That man was subsequently fired, criminally prosecuted, and jailed.

¶ 5. Through a series of emergency detentions and chapter 51 commitments, the client was under continuous county supervision between December 23, 1998, and December 14, 1999, and again between May 11, 2000, and November 26, 2002. She has been under continuous county supervision since January 7, 2003.

---

[2] This amount does not include $23,863.82 paid by the lawyer regulation system to an attorney appointed by the referee to represent the client's interests.

¶ 6. Attorney Voss was first appointed by the State Public Defender's office to represent the client regarding an Oneida County criminal case in February of 1996. Between that time and May of 2003, Attorney Voss represented the client on at least eight separate court matters, including three criminal cases, one civil case, and three chapter 51 commitments. At various times between February of 1996 and May of 2003, Attorney Voss also represented the client on matters unrelated to pending litigation, including efforts to assist her with obtaining reinstatement of her driver's license, social security income issues, and creditor issues. The client understood Attorney Voss to be her attorney on an ongoing, continuing basis beginning in December 1998 through at least May 1, 2003. From about June 2003 until August 12, 2006, Attorney Voss acted as the client's representative payee for her supplemental security income (SSI) benefits. He also provided legal services for the client's will and estate plan.

¶ 7. Attorney Voss and the client had not been involved in a sexual relationship before they developed a lawyer-client relationship. According to the client, she and Attorney Voss began a sexual relationship one summer in the early 2000s, during a time when Attorney Voss was representing her as her attorney.

¶ 8. The client said she and Attorney Voss had sexual intercourse on numerous occasions between that first incident in the early 2000s and July 30, 2006.

¶ 9. In August of 2001, the client told her substance clinician that she was having a sexual relationship with Attorney Voss. The substance clinician reported the client's comment to the agency director of the mental health clinic where she worked. The agency director contacted the Office of Lawyer Regulation

(OLR), but apparently the client would not go forward with a complaint against Attorney Voss at that time.

¶ 10. The client stated that prior to July 30, 2006, she had not had sexual relations with Attorney Voss for several years. She said that on July 30, 2006, Attorney Voss called her and asked if she wanted to go for a ride and she agreed. She said Attorney Voss drove to a hotel and forced her to have sex with him.

¶ 11. Within a couple of days after July 30, the client told her case worker about being sexually assaulted by Attorney Voss on July 30, 2006.

¶ 12. The July 30, 2006, incident was reported to the local sheriff's department. The investigating officers believed there was cause to file criminal charges against Attorney Voss and referred the matter to the district attorney, but no charges were filed.

¶ 13. After August 1, 2006, Attorney Voss had numerous communications with the client and others, including the client's mother and her sister, who is an attorney in another state, in an effort to cause the client to recant her statements regarding his sexual relations with her on July 30, 2006.

¶ 14. An October 8, 2006, e-mail to the client's sister alluded to the possibility that the client would have to testify about things she would not want to talk about in open court and said, "The courtroom can be closed, but things leak out." In an October 15, 2006, e-mail to the client's sister, Attorney Voss said that if he were charged criminally, as part of his defense he would introduce into evidence information regarding various incidents involving the client that would not make her look good and that she would not enjoy testifying about in open court.

¶ 15. On October 23, 2006, Attorney Voss sent a letter to two circuit judges attempting to persuade them

there was no merit to the potential charges Attorney Voss believed the district attorney might pursue against him relating to his engaging in sexual relations with the client on July 30. Attorney Voss discussed why he believed the district attorney would not be able to prove his case. The letter to the judges attached documents relating to the client's sexual history and prior complaints of sexual assault that the client had made against other persons. On October 23, 2006, there was no suit pending in circuit court to which the letter was relevant.

¶ 16. In early November 2006, while the client was in a mental health institution, Attorney Voss sent her various documents and continued to telephone her. On November 25, 2006, Attorney Voss telephoned the client and told her she should "stay at [the mental health institution] if she wants to remain protected."

¶ 17. In late November 2006 Attorney Voss contacted the client's mother and said that if he were charged with a crime related to his contact with the client he "will bring up her family/issues" that would embarrass the client's family.

¶ 18. A court commissioner issued a temporary restraining order against Attorney Voss in early December 2006. A judge ultimately denied the restraining order request. In a December 18, 2006, memorandum filed in the case, Attorney Voss included substantial embarrassing and personal information about the client's sexual and mental health history. A supplement to Attorney Voss's motion to dismiss filed in late January 2007 again included embarrassing personal information about the client.

¶ 19. On January 31, 2007, Attorney Voss sent a letter to the client's counsel alleging that the client had put "a knife in my back." Attorney Voss also said, "I

could not come up with a better revenge for [her] than her being in her current status," which was being committed to a locked facility.

¶ 20. On March 13, 2007, Attorney Voss gave the client a cash payment and caused her to sign a document he had prepared with a list of ten numbered statements, and caused her to write at the bottom of the document, "I read all of the above; and it's the truth."

¶ 21. Between November 25, 2006, and March 30, 2007, Attorney Voss sent the client documents intending to intimidate, embarrass, and harass her in retribution for her making allegations against him, and for refusing to provide him with the information he requested for his defense or recant the allegations.

¶ 22. The OLR filed a complaint against Attorney Voss on January 17, 2008, alleging six counts of misconduct:

 By engaging in sexual relations with [the client] on several occasions beginning in July or August 2001 and through July 2006, during a time when Voss represented [the client] in ongoing legal matters or when Voss was serving as [the client's] representative payee for SSI benefits, and when it was not reasonable for Voss to believe that there was no possibility that engaging in sexual relations with [the client] could materially limit or adversely affect his representation of [the client], and when Voss failed to obtain a written consent from [the client], Voss violated former SCR 20:1.7(b).[3]

_____

[3] Former SCR 20:1.7(b) applies to misconduct committed prior to July 1, 2007. It provided:

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

■ By first engaging in sexual relations with [the client] at a time when Voss represented [the client] in ongoing legal matters and had an ongoing lawyer-client relationship with [the client], absent a consensual sexual relationship at the time the lawyer-client relationship commenced, Voss violated former SCR 20:1.8(k)(2).[4]

■ By stating in his Memorandum filed with [the circuit court] on December 19, 2006, [], that on October 9, 2006, [the client] requested that he not call her anymore and that the "only time I called her since then was on November 25, 2006," when, in fact, Voss made numerous telephone calls to [the client] between October 9, 2006 and December 18, 2006, Voss violated former SCR 20:3.3(a)(1).[5]

■ By repeatedly communicating with [the client], her family members, and others in a manner that served to intimidate, embarrass, harass, or discredit [the client] and by publishing confidential, personal, and irrelevant information regarding the client in a manner that served to intimidate, embarrass, harass, or discredit [the client], including by sending the cor-

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

[4] Former SCR 20:1.8(k)(2) applies to misconduct committed prior to July 1, 2007, and provided, "A lawyer shall not have sexual relations with a current client unless a consensual sexual relationship existed between them when the lawyer-client relationship commenced."

[5] Former SCR 20:3.3(a)(1) applies to misconduct committed prior to July 1, 2007, and provided that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal."

9

respondence dated October 23, 2006, to two [circuit court judges] and by filing the memorandum with the [circuit court] on December 19, 2006, [], Voss violated SCR 20:3.1(a)(3),[6] and via SCR 20:8.4(g),[7] Voss violated the Attorney's Oath, SCR 40.15.[8]

▪ By sending the correspondence dated October 23, 2006, to two [circuit court] judges, when Voss had no legitimate purpose to send the letter and enclosures to the judges, which letter and enclosures had the effect of embarrassing and burdening the client, Voss violated former SCR 20:4.4.[9]

▪ By stating to OLR in a letter dated April 25, 2007, that, with the exception of one get well card, he

---

[6] SCR 20:3.1(a)(3) states that in representing a client, a lawyer shall not "file a suit, assert a position, conduct a defense, delay a trial or take other action on behalf of the client when the lawyer knows or when it is obvious that such an action would serve merely to harass or maliciously injure another."

[7] SCR 20:8.4(g) provides that it is professional misconduct for a lawyer to "violate the attorney's oath."

[8] SCR 40.15 provides, in pertinent part:

I will employ, for the purpose of maintaining the causes confided to me, such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law; I will maintain the confidence and preserve inviolate the secrets of my client and will accept no compensation in connection with my client's business except from my client or with my client's knowledge and approval; I will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged; . . . .

[9] Former SCR 20:4.4 applies to misconduct committed prior to July 1, 2007, and provided, "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."

had provided OLR with all documents he had sent to the client since August of 2006, when in fact, Voss had failed to provide OLR with a copy of the letter received by the client on March 30, 2007 or to identify it as omitted, Voss violated SCR 22.03(6)[10] and SCR 20:8.4(f).[11]

¶ 23. Jonathan Goodman was initially appointed as referee. The OLR filed a request for substitution, and Stanley F. Hack was then appointed referee. Attorney Voss filed an answer on February 14, 2008, averring that he never had sexual relations with the client while acting as her attorney. Referee Hack subsequently ordered all documents in the case to be maintained under seal.

¶ 24. The case proceeded through extensive discovery and 15 days of hearings before the referee. When asked if he had sexual relations with the client on various dates, Attorney Voss repeatedly, although not exclusively, invoked his Fifth Amendment right against self-incrimination. With respect to some specific dates, he would answer, "No."

¶ 25. The client's recollection of her sexual relationship with Attorney Voss was quite consistent throughout and was corroborated by testimony from the various witnesses she told about the relationship, including her case workers, the attorney who succeeded Attorney Voss in representing her, and the law enforcement

---

[10] SCR 22.03(6) provides, "In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[11] SCR 20:8.4(f) states it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

11

personnel who investigated possible sexual assault charges against Attorney Voss.

¶ 26. Following the close of the testimony, the referee asked for post-trial briefs. The OLR's brief stated that Attorney Voss admitted that he knew about the client's mental health diagnoses, including her suicidal history. The OLR noted that Attorney Voss claimed he has sole authority and decision-making power to decide when he is the attorney and when he is not the attorney for a client, and that the client has no right to decide whether there is a continuing attorney-client relationship. Thus, Attorney Voss argued he may end the attorney-client relationship with the client immediately after a hearing on a chapter 51 commitment and that same day may elect to have sexual relations with the client. The OLR said this is a self-serving interpretation of the supreme court rules and in this fact situation, it is particularly egregious and predatory. The OLR noted that the client was the subject of approximately 82 different treatment matters, including mental commitments, out-of-home placements, substance abuse treatments, inpatient placements, and home placements between 1996 and June 30, 2006.

¶ 27. Attorney Voss filed a 109–page post-trial brief which started out by announcing, "[The client] is a manipulative, alcoholic, violent, mentally ill, criminal." Attorney Voss's post-trial brief ended by saying, "No relationship is symmetrical. It is one she wanted to be in. . . . The relationship was as normal as it could be under the circumstances."

¶ 28. The referee issued his report and recommendation on March 29, 2010. The referee found that the OLR had met its burden of proof with respect to Counts 1 through 5 of the complaint. The referee found a lack of proof as to Count 6, which alleged that

Attorney Voss failed to provide the OLR with a copy of a letter he sent to the client.

¶ 29. The referee found that Attorney Voss engaged in sexual relations with the client on several occasions beginning in the summer of 2001 and continuing through July 2006, during a time when he represented her in ongoing legal matters or when he was serving as her representative payee for SSI benefits. The referee also found that it was not reasonable for Attorney Voss to believe there was no possibility that engaging in sex with her could not materially limit or adversely affect his representation of her. The referee also found that Attorney Voss repeatedly communicated with the client, her family members, and others in a manner that served to intimidate, embarrass, harass, or discredit her, and that he published confidential, personal, and irrelevant information about her in a manner that served to intimidate, embarrass, harass, or discredit her.

¶ 30. The referee concluded that "due to the very serious nature of his conduct, Attorney Frederick J. Voss should receive at least a one-year suspension of his Wisconsin law license and pay the costs of the disciplinary proceeding."

¶ 31. On April 22, 2010, counsel for the client sent a letter to the court requesting that the sanctions in the case include an order that Attorney Voss continue to have no contact with the client in the future and that the file in the case remain confidential and not accessible to the public even after the conclusion of the matter. On June 4, 2010, Attorney Voss wrote to the court objecting to the no-contact order. He said, "There is already protection under the law" for the client since if he harassed her she could call the police and he could

be charged with harassment or disorderly conduct. He has no objection to the record being sealed.

¶ 32. This court will affirm a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Eisenberg,* 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747. This court is free to impose whatever discipline it deems appropriate, regardless of the referee's recommendation. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 33. Because they have not been shown to be clearly erroneous, we adopt the referee's findings of fact. We also agree with the referee's conclusions of law. We conclude, however, that the seriousness of Attorney Voss's misconduct warrants a suspension of his license to practice law for a period of four years, eight months.

¶ 34. We find *In re Disciplinary Proceedings Against Woodmansee,* 147 Wis. 2d 837, 434 N.W.2d 94 (1989), to be quite analogous to this fact situation. Attorney Woodmansee had represented a woman in a divorce commenced by her husband. The client had told Woodmansee that her husband had abused her and that her infant son had recently died of Sudden Infant Death Syndrome and her husband blamed her for the death. As a result, she had sought counseling and treatment from both a psychologist and psychiatrist and was taking anti-depressants and anti-anxiety medications.

¶ 35. Attorney Woodmansee visited the client's home, purportedly to bring some papers related to the divorce action, and asked her to arrange for her daughter not to be present. When he arrived at the client's

home, Attorney Woodmansee put his hands on the woman's shoulders and directed her to the bedroom where he pushed her onto the bed and began touching her sexually and trying to remove her clothing. The client protested and struck him with her elbow, whereby Attorney Woodmansee left.

¶ 36. As a result of the incident, Attorney Woodmansee's client experienced severe depression, to the point of becoming suicidal. Her psychiatrist diagnosed her as suffering from a post-traumatic stress disorder, and she was hospitalized for eight days. Attorney Woodmansee was subsequently convicted of fourth-degree sexual assault as a result of the incident. This court imposed a three-year suspension of his law license.

¶ 37. Attorney Voss's conduct was even more egregious than Attorney Woodmansee's and as a result deserves a harsher sanction. Although Attorney Woodmansee's client was able to rebuff his advances, Attorney Voss engaged in numerous instances of sexual relations with a client who suffered from numerous vulnerabilities. In addition to engaging in a sexual relationship with a vulnerable client, Attorney Voss disregarded the requests made by his client in early October 2006 that he not call her any more, and made numerous telephone calls to her between October and December 2006, including during the time she was a patient in a mental institution. After law enforcement authorities began their criminal investigation of Attorney Voss pertaining to his July 30, 2006, sexual encounter with the client, Attorney Voss had numerous communications with the client, her mother, her sister, and others, in an effort to get her to recant her statements about the events of July 30, 2006. In March 2007 Attorney Voss gave the client a cash payment and induced her to sign a self-serving document that he had prepared.

15

¶ 38. Attorney Voss sent a letter to two circuit court judges trying to persuade them there would be no merit to the potential criminal charges Attorney Voss believed the district attorney might pursue against him relating to the July 30, 2006, sexual encounter with the client. The letter Attorney Voss sent to the judges attached documents relating to the client's sexual history. Attorney Voss also included detailed information about the client's sexual and mental health histories in documents he submitted in the restraining order case the client filed against him. Throughout this entire disciplinary proceeding, Attorney Voss persisted in attaching to his pleadings hundreds of pages of medical records containing highly sensitive personal information about the client.

■

¶ 39. In determining an appropriate sanction for an attorney who has engaged in misconduct, we must consider the seriousness of the misconduct, as well as the need to protect the public, courts, and legal system from repetition of misconduct and to deter attorneys from engaging in similar misconduct. *See In re Disciplinary Proceeding Against Arthur,* 2005 WI 40, ¶ 78, 279 Wis. 2d 583, 694 N.W.2d 910. Attorney Voss's misconduct is extremely serious. As the client's longtime attorney and the payee for her SSI benefits, Attorney Voss held substantial power over the client. He repeatedly took advantage of his position of power and victimized a very vulnerable person for his own selfish motives. The egregious nature of Attorney Voss's conduct caused us to give serious consideration to the sanction of revocation. Although we ultimately chose not to revoke his license to practice law, a lengthy suspension is required to effectuate the purposes of Wisconsin's

attorney regulatory system. A lesser sanction would unduly depreciate the seriousness of Attorney Voss's misconduct.

¶ 40. Although the record in attorney regulatory proceedings is normally public once the OLR has filed a complaint, due to the extremely sensitive nature of this matter, the referee ordered that the entire record be sealed. We find it appropriate to grant the request made by counsel for the client that the entire file in this matter remain confidential and not accessible to the public. We also deem it appropriate to order that Attorney Voss not have any contact with the client.

██

¶ 41. Finally, we find it appropriate that Attorney Voss pay the full costs of the proceeding, which are $145,216.81. Although this is a staggering amount, the reason the costs escalated to this level is largely because of Attorney Voss's aggressive litigation style. It appears he greatly over-litigated the case and thus it is appropriate to assess the full amount of costs against him.

¶ 42. IT IS ORDERED that the license of Frederick J. Voss to practice law in Wisconsin is suspended for a period of four years, eight months, effective March 1, 2011.

¶ 43. IT IS FURTHER ORDERED that Frederick J. Voss have no contact with his former client.

¶ 44. IT IS FURTHER ORDERED that the entire file in this proceeding remain sealed and confidential.

¶ 45. IT IS FURTHER ORDERED that within six months of the date of this order, Frederick J. Voss pay to the Office of Lawyer Regulation the costs of this proceeding. If costs are not paid within the time specified and absent a showing of his inability to pay the costs, Frederick J. Voss's license to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 46. IT IS FURTHER ORDERED that Frederick J. Voss shall comply with SCR 22.26 regarding the duties of a person whose license to practice law in Wisconsin has been suspended.